IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>**Plaintiff,**<br><br>v.<br><br>**MALACHI FINANCIAL PRODUCTS, INC.** and **PORTER B. BINGHAM,**<br><br>**Defendants.** | **Civil Action File No.** 3:18-cv-1-HSO-LRA<br><br>**Jury Trial Requested** |

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

The plaintiff, the Securities and Exchange Commission ("Commission"), files this Complaint and alleges the following:

### SUMMARY

1. This action concerns misconduct by a municipal advisor and its principal in connection with a $1.1 million bond offering by the City of Rolling Fork, Mississippi ("Rolling Fork" or the "City").

2. In January 2015, the City hired Defendant Malachi Financial Products, Inc. ("Malachi") to serve as its municipal advisor for a contemplated bond offering. Malachi is owned and controlled by Defendant Porter B. Bingham ("Bingham").

3. In May 2015, Bingham accepted two payments totaling $2,500 from Anthony A. Stovall ("Stovall"), a registered representative who was associated with a broker-dealer and municipal securities dealer Bonwick Capital Partners, LLC ("Bonwick").

1

4. Approximately two weeks after receiving those payments, a Malachi employee recommended that the City hire Bonwick to underwrite the anticipated bond offering. In June 2015, the City hired Bonwick to underwrite the offering. Neither Bingham nor Stovall disclosed the payments or the resulting conflicts of interest to the City.

5. After the bond offering closed in October 2015, Bingham directed a Malachi employee to submit two invoices for municipal advisory services to the bond trustee for payment.

6. The first invoice, for $22,000, was consistent with the written agreement between Malachi and the City, which provided that the City would pay no more than 2% of the total offering amount.

7. The second invoice, for $33,000, purported to be for additional services that were not part of the original agreement. In fact, the second invoice was fraudulent because Malachi did not provide the purported additional services and the City did not authorize or agree to the additional charges.

8. Although both invoices were addressed to the Mayor of the City, Malachi did not provide them to the Mayor or anyone else at the City before payment. Thus, the City was not aware of the fraudulent overcharge until after the bond trustee paid the invoice.

## **VIOLATIONS**

9. As a result of this conduct, Malachi and Bingham violated Sections 15B(a)(5) and 15B(c)(1) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 77o-4(a)(5) and 78o-4(c)(1)] and Municipal Securities Rulemaking Board ("MSRB") Rule G-17 thereunder, and Bingham aided and abetted Malachi's violations of these provisions. The Commission seeks

permanent injunctive relief against Malachi and Bingham along with disgorgement of ill-gotten gains, pre-judgment interest thereon, and civil money penalties.

## JURISDICTION AND VENUE

10. The Commission brings this action pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] to enjoin the Defendants from engaging in the transactions, acts, practices and courses of business alleged in this Complaint, and transactions, acts, practices and courses of business of similar purport and object, for disgorgement of illegally obtained funds, prejudgment interest and other equitable relief, and for civil money penalties.

11. This Court has jurisdiction over this action pursuant to Section 20(d) of the Exchange Act [15 U.S.C. § 78u(d)].

12. The Defendants, directly and indirectly, have made use of the mails, the means and instrumentalities of transportation and communication in interstate commerce, and the means and instrumentalities of interstate commerce, in connection with the transactions, acts, practices, and courses of business alleged in this Complaint.

13. Venue lies in this Court pursuant to Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)] because certain of the transactions, acts, practices and courses of business constituting violations of the Exchange Act have occurred within the Southern District of Mississippi.

## DEFENDANTS

14. **Malachi Financial Products, Inc.** ("Malachi") is a Georgia corporation formed in 2005 and located in Roswell, Georgia. Malachi has one employee in addition to Bingham. In 2014, Malachi registered with the Commission and the MSRB as a municipal advisor. However, neither Bingham nor Malachi's other employee took the required Series 50 Municipal Advisor

exam within the requisite time. As a result, Malachi is not currently permitted to provide municipal advice.

15.     **Porter B. Bingham**, age 56, of Roswell, Georgia has been president and sole shareholder of Malachi since its formation. Prior to forming Malachi, Bingham was a registered representative with several different broker-dealers. Bingham held Series 7, 24 and 63 securities licenses. The last firm that Bingham was registered with was The Malachi Group, Inc., ("The Malachi Group") a registered broker-dealer he owned and controlled. The Malachi Group, which ceased operations more than a decade ago, predated Malachi, and is a completely separate entity. In August 2007, the Financial Industry Regulatory Authority ("FINRA"), via a consent agreement, suspended Bingham as a general securities principal for a period of one year and fined him $10,000 for various net capital violations by The Malachi Group and for failing to file The Malachi Group's annual audit report in a timely manner. In turn, The Malachi Group was sanctioned on eight occasions for a variety of compliance issues and for failing to maintain the proper net capital amount. In 2006, The Malachi Group was expelled from the then National Association of Securities Dealers ("NASD"), which is now known as FINRA, for failing to pay fines and its broker-dealer registration was cancelled.

16.     Previously, Malachi had filed Form MA-I with the Commission establishing Bingham as a person associated with a municipal advisory firm. However, because Bingham did not take or pass the Series 50 municipal advisor exam by the requisite deadline, pursuant to MSRB Rule G-3, he is not permitted to act as an associated person of a municipal advisor or provide municipal advice.

## RELATED ENTITY AND INDIVIDUAL

17.     **City of Rolling Fork, Mississippi** ("Rolling Fork" or the "City") is the county seat of Sharkey County. Rolling Fork has a population of approximately 2,025 and is located approximately 90 minutes Northwest of Jackson, Mississippi.

18.     **Anthony Stovall**, age 50, of West Orange, New Jersey, is currently not employed in the financial services industry. From May 2015 to June 2016, Stovall was a registered representative and co-head of the municipal securities group at Bonwick. Stovall was a registered representative from 1993 to February 2017 and previously worked for several broker-dealer firms. Stovall has held Series 7, 53 and 63 securities licenses.

## AUTHORITY

19.     The SEC is an independent agency of the United States government established by Congress in 1934. The SEC has been granted the authority to, among other things, investigate and civilly prosecute the federal securities laws. Section 21(a) of the Exchange Act [15 U.S.C. § 78u(a)].

20.     The MSRB is an independent, non-governmental, non-profit organization overseen by the SEC. Congress provided the MSRB with authority to write investor protection rules and other rules regulating entities and individuals who participate in the United States municipal securities market. See Section 15B(b) of the Exchange Act [15 U.S.C. § 78o–4(b)].

21.     Under Section 15B(c)(1) of the Exchange Act [15 U.S.C. § 78o–4(c)(1)], the SEC has the authority to investigate and civilly prosecute violations of MSRB rules and regulations.

## FACTS

### A. The City of Rolling Fork Hired Malachi to Provide Municipal Advisory Services for its Bond Offering

22. In late 2014, Rolling Fork, a small municipality with a population of just over 2,000, sought to raise funds for certain improvement projects. These projects included paving streets and public parking areas, repairing municipal buildings, and constructing a municipal swimming pool.

23. In January 2015, Rolling Fork hired Malachi as the municipal advisor for a proposed bond offering to fund the necessary improvements (the "Offering").

24. The City and Malachi entered into an "Agreement for Professional Financial Advisory Services" ("MA Agreement"). Bingham, as Malachi's president and sole principal, signed the MA Agreement on behalf of Malachi. Under the terms of the MA Agreement, Malachi was to be paid an amount not to exceed 2% of the debt issuance.

### B. Bingham and Malachi Recommended that the City Hire Stovall and Bonwick Without Disclosing Stovall's Recent Payments to Bingham

25. Bingham and Stovall have known each other since 2004. Between 2005 and 2013, Stovall and Bingham had worked together providing underwriting and municipal advisory services, respectively, to municipal issuers in approximately 15 bond offerings.

26. In late May 2015, Stovall provided Bingham with a total of $2,500 in two separate payments.

27. Specifically, on or about May 22, 2015, Stovall directed a family member to write a check for $2,000 from an account on which Stovall was not a signatory. That check was made payable to "cash MFP, LLC." MFP, LLC, which Bingham controlled, is a defunct corporation Bingham formed in 2010. Bingham deposited the check in an MFP , LLC account on May 26, 2-15.

6

28. A few days later, on May 28, Stovall directed the family member to wire an additional $500 from the same account to a different MFP, LLC bank account.

29. In each case, the checks were deposited just in time to allow Bingham to avoid a negative balance in each account.

30. Bingham used the funds for personal and business purposes.

31. A few weeks after these payments were received, at a June 2015 meeting of the Rolling Fork Board of Aldermen, a Malachi employee, at Bingham's instruction, recommended that Rolling Fork hire Stovall and Bonwick to underwrite the Offering.

32. Stovall than made a presentation at the meeting in which he described Bonwick's capabilities and past performance.

33. The Malachi representative did not recommend or introduce any other underwriting firms for the City to consider.

34. Based in part on Malachi's recommendation, Rolling Fork's Board of Alderman voted to hire Stovall and Bonwick.

35. Neither the Malachi representative nor Stovall disclosed to the City that Stovall had paid Bingham $2,500 only a few weeks earlier.

    **C.**     **Malachi and Bingham Overcharged the City for Municipal Advisory Services**

36. The City's Offering was originally contemplated to be for $2 million.

37. Due to the City's statutory offering limits, however, Rolling Fork was required to reduce the size of the Offering to $1.1 million.

38. This meant that, under the terms of the MA Agreement, Malachi's compensation (2% of the total offering amount) was reduced from $40,000 to $22,000.

39. Malachi and Bingham attempted to recoup this lost revenue by fraudulently charging the City for purported "additional services" in connection with the Offering that they did not actually provide.

40. On October 15, 2015, the day after the Offering closed, Bingham directed Malachi's employee to prepare and send two invoices totaling $55,000 to the bond trustee for payment.

41. One invoice was for $22,000, which was Malachi's contractual fee for the municipal advisory services provided to Rolling Fork (2% of the $1.1 million issuance).

42. The other invoice was for $33,000 and, according to the invoice, was purportedly for services related to the "investment of bond proceeds."

43. This invoice was false and fraudulent and was not authorized or agreed to by the City.

44. Although both invoices were addressed to the Mayor of Rolling Fork, Malachi only transmitted them to the bond trustee and never sent them to the Mayor or the City. As a result, the bond trustee paid the full $55,000 to Malachi before Rolling Fork became aware of the invoices.

45. Malachi provided no services relating to the investment of bond proceeds to the City of Rolling Fork. Additionally, the bond proceeds had not, in fact, been invested by the time of the second invoice.

46. Neither Bingham nor Malachi has any documentation reflecting any investment services they purportedly provided the City in connection with the proceeds from the Offering.

47. Although Malachi and Bingham may have also created some post-bond issuance compliance policies for the City and examined the City tax rolls to determine the City's legal lending limit, neither of those services, even if provided, justified the $33,000 invoice.

48. The post-issuance compliance policies that Malachi and Bingham purportedly created for the City contained nothing but standard boilerplate language, much of which can be found merely by doing an internet search. As such, it would have been unreasonable to bill the City $33,000 for preparing these policies. More importantly, Malachi and Bingham never provided those written policies to the City.

49. Although Malachi and Bingham did a minimal amount of work to examine Rolling Fork's property tax rolls to calculate the City's legal debt limit, those services were already contemplated by the MA Agreement and thus do not support the additional invoice.

50. The MA Agreement provided that Malachi would "help . . . determine an issue amount," assist with "structuring the issue," and "advis[e] on other matters related to the City's debt and capital plans." Calculation of the City's debt limit was clearly necessary to determine the issue amount and is a typical task that a municipal advisor would undertake as part of a general obligation offering.

51. Moreover, the minimal amount of work performed on this task would not justify a $33,000 invoice, as Malachi spent only between three and five hours working on the tax valuation issue.

## COUNT I—FRAUDULENT PRACTICES BY A MUNICIPAL ADVISOR

### Violations by Malachi and Bingham of Section 15B(a)(5) of the Exchange Act
### [15 U.S.C. § 77o-4(a)(5)]

52.   Paragraphs 1 through 51 are hereby re-alleged and are incorporated herein by reference.

53.   Section 15B(a)(5) of the Exchange Act [15 U.S.C. § 77o-4(a)(5)] provides in relevant part that no municipal advisor shall make use of the mails or any means or instrumentality of interstate commerce to provide advice to a municipal entity with respect to the issuance of municipal securities in connection with which such municipal advisor engages in any fraudulent, deceptive, or manipulative act or practice.

54.   By engaging in the conduct alleged above, Defendants Malachi and Bingham acted as municipal advisors, as that term is defined in Section 15B(e)(4)(A) of the Exchange Act, [15 U.S.C. § 78o-4(e)(4)(A)].

55.   By engaging in the conduct alleged above, Defendants Malachi and Bingham violated Section 15B(a)(5) of the Exchange Act [15 U.S.C. § 78o–4(a)(5)] by using the means or instrumentalities of interstate commerce or the mails while engaging in fraudulent, deceptive, and/or manipulative acts or practices in providing advice to a municipal entity.

## COUNT II—BREACH OF FIDUCIARY DUTY

### Violations by Malachi and Bingham of Section 15B(c)(1) of the Exchange Act
### [15 U.S.C. § 78o-4(c)(1)]

56.   Paragraphs 1 through 51 are hereby re-alleged and are incorporated herein by reference.

57.   Pursuant to Section 15B(c)(1) of the Exchange Act [15 U.S.C. § 78o-4(c)(1)] a municipal advisor and any person associated with a municipal advisor shall be deemed to have a

fiduciary duty to any municipal entity for whom the municipal advisor acts as a municipal advisor

58.     By engaging in the conduct alleged above, Defendants Malachi and Bingham acted as a municipal advisor and person associated with a municipal advisor, as those terms are defined in Sections 15B(e)(4)(A) and 15B(e)(7) of the Exchange Act [15 U.S.C. §§ 78o-4(e)(4)(A) and (7)] and, as such, they owed a fiduciary duty to Rolling Fork.

59.     By engaging in the conduct described above, Defendants Bingham and Malachi breached their fiduciary duty to the City in violation of Section 15B(c)(1) of the Exchange Act [15 U.S.C. § 78o–4(c)(1)].

## COUNT III

### Violations by Malachi and Bingham of Section 15B(c)(1) of the Exchange Act [15 U.S.C. § 78o-4(c)(1) and MSRB Rule G-17]

60.     Paragraphs 1 through 51 are hereby re-alleged and are incorporated herein by reference.

61.     Section 15B(c)(1) of the Exchange Act [15 U.S.C. § 78o-4(c)(1)] makes it unlawful for any municipal advisor to make use of the mails or any means or instrumentality of interstate commerce to effect any transaction in, or to induce the purchase or sale of any municipal security in contravention of any rule of the MSRB.

62.     Pursuant to Section 15B(b)(2) of the Exchange Act [15 U.S.C. § 78o-4(b)(2)] the MSRB proposes and adopts rules governing the conduct of municipal advisors in connection with municipal securities. Pursuant to Section 21(d)(1) of the Exchange Act [15 U.S.C. § 78u(d)(1)], the Commission is charged with enforcing MSRB rules.

63.     Pursuant to MSRB Rule G-17, each municipal advisor, in the conduct of its municipal advisory activities, shall deal fairly with all persons and shall not engage in any deceptive, dishonest, or unfair practice.

64. Pursuant to MSRB Rule D-11, Bingham falls with within the definition of municipal advisor for purposes of MSRB Rule G-17.

65. By engaging in the conduct alleged above, Defendants Malachi and Bingham, while acting as a municipal advisor, engaged in acts, practices, and courses of business that violated Section 15B(c)(1) of the Exchange Act [15 U.S.C. § 78o–4(c)(1)] and MSRB Rule G-17.

## COUNT IV
## AIDING AND ABETTING FRAUDULENT PRACTICES BY A MUNICIPAL ADVISOR

### Bingham's Aiding and Abetting Violations of Section 15B(a)(5) of the Exchange Act [15 U.S.C. § 77o-4(a)(5)]

66. Paragraphs 1 through 51 are hereby re-alleged and are incorporated herein by reference.

67. By engaging in the conduct alleged above, Defendant Malachi violated Section 15B(a)(5) of the Exchange Act [15 U.S.C. § 78o–4(a)(5)].

68. Defendant Bingham knowingly or recklessly provided substantial assistance to Defendant Malachi in its violation of Section 15B(a)(5) of the Exchange Act [15 U.S.C. § 78o–4(a)(5)].

69. By engaging in the conduct alleged above, Defendant Bingham aided and abetted Malachi's violations of Section 15B(a)(5) of the Exchange Act [15 U.S.C. § 78o–4(a)(5)].

## COUNT V
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

### Bingham's Aiding and Abetting Violations of Section 15B(c)(1) of the Exchange Act, [15 U.S.C. § 78o–4(c)(1)]

70. Paragraphs 1 through 51 are hereby re-alleged and are incorporated herein by reference.

71. By engaging in the conduct alleged above, Defendant Malachi breached its fiduciary duty to Rolling Fork, in violation of Section 15B(c)(1) of the Exchange Act [15 U.S.C. § 78o–4(c)(1)].

72. Defendant Bingham knowingly or recklessly provided substantial assistance to Defendant Malachi in its violation of Section 15B(c)(1) of the Exchange Act [15 U.S.C. § 78o–4(c)(1)].

73. By engaging in the conduct described above, Defendant Bingham aided and abetted Malachi's violations of Section 15B(c)(1) of the Exchange Act [15 U.S.C. § 78o–4(c)(1)].

## COUNT VI

### Bingham's Aiding and Abetting Violations of Section 15B(c)(1) of the Exchange Act [15 U.S.C. § 78o–4(c)(1)] and MSRB Rule G-17

74. Paragraphs 1 through 51 are hereby re-alleged and are incorporated herein by reference.

75. By the conduct alleged above, Defendant Malachi violated Section 15B(c)(1) of the Exchange Act [15 U.S.C. § 78o–4(c)(1)] and MSRB Rule G-17 by not dealing fairly with the City and engaging in deceptive, dishonest and unfair practices.

76. Defendant Bingham knowingly or recklessly provided substantial assistance to Defendant Malachi in its violation of Section 15B(c)(1) of the Exchange Act [15 U.S.C. § 78o–4(c)(1)], and MSRB Rule G-17.

77. By engaging in the conduct described above, Defendant Bingham aided and abetted Malachi's violations of Section 15B(c)(1) of the Exchange Act [15 U.S.C. § 78o–4(c)(1)], and MSRB Rule G-17.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Commission respectfully prays for:

**I.**

Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure, finding that the Defendants named herein committed the violations alleged herein.

**II.**

Permanent injunctions enjoining Defendants Malachi and Bingham from violating Sections 15B(a)(5) and 15B(c)(1) of the Exchange Act [15 U.S.C. §§ 78o–4(a)(5) and 78o–4(c)(1)] and MSRB Rule G-17, promulgated thereunder.

**III.**

Permanent injunctions enjoining Defendant Bingham from aiding and abetting Malachi's violations of Sections 15B(a)(5) and 15B(c)(1) of the Exchange Act [15 U.S.C. §§ 78o–4(a)(5) and 78o–4(c)(1)] and MSRB Rule G-17, promulgated thereunder.

**IV.**

An order directing Defendants Malachi and Bingham to pay disgorgement of all ill-gotten gains or unjust enrichment and to pay prejudgment interest on the amount ordered to be disgorged, to effect the remedial purposes of the federal securities laws.

**V.**

An order pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] imposing civil penalties against Defendants Malachi and Bingham.

**VI.**

Issue an order that retains jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that may have been entered or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

**VII.**

Grant such other and further relief as this Court may deem just, equitable, and appropriate in connection with the enforcement of the federal securities laws and for the protection of investors.

RESPECTFULLY SUBMITTED,

/s/Edward G. Sullivan
Edward G. Sullivan
Senior Trial Counsel
Georgia Bar No. 691140

/s/Justin Delfino
Justin Delfino
Senior Counsel
Georgia Bar No. 570206

COUNSEL FOR PLAINTIFF
U. S. SECURITIES AND EXCHANGE COMMISSION
950 East Paces Ferry Road, N.E., Suite 900
Atlanta, Georgia 30326
(404) 842-7612 (Sullivan)
(404) 942-0698 (Delfino)
sullivane@sec.gov
delfinoj@sec.gov